NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
JOSEPH LUPERELLA,                   :    Civil Action No. 06-1360 (SDW)
                                    :
      Petitioner,                   :
                                    :
v.                                  :
                                    :    **Opinion**
UNITED STATES OF AMERICA,           :
                                    :
      Respondent.                   :
_____ :    October 3, 2007

**WIGENTON**, District Judge.

    Before the Court is the motion of Joseph Luparella ("Petitioner" or "Luparella") to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 ("Motion"). The Government ("Respondent") answered Petitioner's Motion. For the reasons set forth below, this Court will dismiss the majority of Petitioner's claims and hold a hearing only as to Petitioner's claim that he was prevented from testifying on his own behalf.

**PROCEDURAL HISTORY**

    On September 25, 2002, a grand jury returned a five-count indictment against then defendant Luparella, a certified public accountant, for conspiring with the brokerage firm First Interregional Equity Corporation ("FI Equity")[1] and its former employees and officers to defraud the United States

---

[1] FI Equity is now a defunct corporation. It was founded and owned by Herbert Goettlich. Luparella previously audited FI Equity in connection with the SEC requirement that audits be conducted and filed by an independent certified public accountant firm. Luparella performed this service first for FI Equity as a partner with Ross, Rosenthal and Luparella, and then later supervised this service as a partner

in the collection of income taxes. (Resp't Br. at 1.) On April 5, 2004, a jury found Luparella guilty of conspiring to defraud the United States (Count 1), assisting in the preparation of a false tax return (Count 2), and committing perjury (Counts 3 and 4). (Resp't Br. at 2.) Luparella was acquitted on Count 5, the last of the perjury counts. (Resp't Br. at 2.) On March 24, 2005, Judge Bassler sentenced Luparella to concurrent 46-month terms of imprisonment on Counts 1, 3, and 4, and a concurrent 36-month term of imprisonment on Count 2. (Resp't Br. at 2.) Additionally, Judge Bassler imposed a $20,000 fine and $400 in special assessments. (Resp't Br. at 2-3.) On March 30, 2005, Luparella filed a timely notice of appeal. In an opinion filed October 31, 2005, the Third Circuit affirmed the judgment entered by the District Court and denied Luparella's request for a new trial. On or about March 24, 2006, Luparella filed the present Motion. (Resp't Br. at 3.)

Petitioner sets forth the following three grounds as the basis to vacate, set aside or correct his sentence: 1) denial of effective assistance of counsel; 2) conviction obtained by violation of the protection against double jeopardy; and 3) denial of proper medical treatment. (*See* Pet.'s Mot. at 5-6.) Additionally, Petitioner makes other allegations about the deliberate deception of the court and false evidence and testimony.

**LEGAL STANDARD**

Section 2255 petitioners have the burden of proof to demonstrate ineffective assistance of counsel. *United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980). A defendant is denied the right to effective assistance of counsel when, 1) his attorney's performance falls below "an objective

---

in Luparella, Florio and Ridilla ("LFR" firm). Between 1988 and 1997 the Goettlichs perpetrated a fraud on FI Equity customers, and during this period Luparella audited FI Equity annually.

standard of reasonableness," and 2) there is a "reasonable probability" that such ineffectiveness prejudiced the outcome at trial. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

The first prong requires petitioner to identify those acts or omissions by counsel that were outside the range of professionally competent assistance. *Id.* at 690. The Court must be highly deferential when assessing an attorney's performance and, as such, petitioner must overcome a strong presumption that the challenged action "might be considered sound trial strategy." *Id.* at 689. Nevertheless, a *pro se* § 2255 petitioner's allegations must be accepted as true unless they are "clearly frivolous." *Moore v. United States*, 571 F.2d 179, 184 (3d Cir. 1978) (footnote omitted).

The second prong requires petitioner to show a reasonable probability that, but for counsel's professional incompetence, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability of prejudice is one "sufficient to undermine confidence in the outcome." *Id.* The Third Circuit interprets *Strickland* as requiring that the court first consider whether the assumed deficient conduct prejudiced the defendant. *McNeil v. Cuyler*, 782 F.2d 443, 449 (3d Cir. 1986). Ultimately, the court must consider the effect of any errors in light of the "totality of the evidence" before the original judge or jury, as some errors will have had a more pervasive effect than others. *Strickland*, 466 U.S. at 695-96.

**DISCUSSION**

A prisoner may seek relief on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise

subject to collateral attack." 28 U.S.C. § 2255. As set forth below, the Court will address the three major grounds that Petitioner has articulated as the basis for his Petition.

A. PETITIONER'S CLAIM OF DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's first ground for his Motion is the "denial of effective assistance of counsel." (Pet.'s Mot. at 5.) In Petitioner's Motion, Petitioner alleges failings in his trial counsel, Edward Bilinkas ("Bilinkas"), as to the following: 1) selection of witnesses and experts; 2) trial arguments, summation and closing comments; 3) not filing certain motions on Petitioner's behalf; and 4) alleged refusal to allow Petitioner to testify. (*See* Resp't Br.; Pet.'s Mot.)

In a criminal case, the authority to make certain decisions regarding the defense is divided between the accused and his attorney. *Gov't of the Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1433 (3d Cir. 1996). The accused has the ultimate authority whether to plead guilty, waive the right to a jury, testify, appeal, or waive the right to counsel. *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (describing such decisions as "fundamental"). Nevertheless, "the day-to-day conduct of the defense rests with the attorney," who has "the immediate and ultimate responsibility of deciding if and when to object, which witnesses, if any, to call, and what defenses to develop." *Weatherwax*, 77 F.3d at 1433 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 93 (1977) (Burger, C.J., concurring)). This can include trial arguments, summations and the filing of motions.

To succeed with claims of ineffective assistance as to these matters, Petitioner must establish, for example, that the motion counsel failed to file had some "potential for success." *United States v. Fulford*, 825 F.2d 3, 9 (3d Cir. 1987). That is, the motion must have had a basis in law and fact.

4

*Id.* Furthermore, if counsel's tactical "decision has a rational basis, a court is without authority to second-guess counsel's [judgment] call." *Weatherwax*, 77 F.3d at 1433. Moreover, the Third Circuit recognizes witness selection to be among the "non-fundamental" decisions within the ultimate purview of counsel. *Weatherwax*, 77 F.3d at 1434. *See also United States v. Long*, 674 F.2d 848, 855 (11th Cir. 1982) (holding that failure to call an alibi witness did not constitute ineffective assistance of counsel).

Petitioner does not meet his burden to demonstrate that he was denied effective assistance of counsel for the majority of the claims asserted.[2] Thus, Petitioner's claims of ineffective assistance of counsel related to strategic decisions, such as the selection of witnesses and experts, trial arguments and failure to file certain motions, will be dismissed. Petitioner has not shown that Bilinkas' performance was below an objective standard of reasonableness or that there was a reasonable probability that the alleged ineffectiveness of Bilinkas' tactical decisions prejudiced the outcome at trial.

Petitioner also claims that he was prevented from testifying on his own behalf. Indeed, a defendant has a constitutional right to testify on his or her own behalf. *Rock v. Arkansas*, 483 U.S. 44, 49-53 (1987). Defense counsel has a duty to inform defendant of this right, but a defendant may nevertheless waive it so long as the decision is "knowing and intelligent." *United States v. Pennycooke*, 65 F.3d 9, 11 (3d Cir. 1995). The decision not to testify is considered "an important part of trial strategy" and, as such, the court is reluctant to interfere. *Id.* Furthermore, "where a

---

[2] Petitioner makes allegations regarding attorney Richard Kress, who ceased to represent Petitioner in or about March of 2002. (*See* Resp't Br. at 48.) Kress did not represent Petitioner in this prosecution and, as such, alleged deficiencies in Kress' representation are not relevant to Petitioner's Motion pursuant to § 2255.

defendant is aware of and understands his right to testify . . . counsel's alleged failure to call the defendant to the stand does not constitute ineffective assistance of counsel." *United States v. Smith*, 235 F. Supp. 2d. 418, 424 (E.D. Pa. 2002) (citing *United States v. Castillo*, 14 F.3d 802, 804-05 (2d Cir. 1994)).

Accordingly, when a § 2255 petitioner alleges that counsel denied him the right to testify, the allegation must be supported by more than a "barebones assertion." *Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991) (Posner, J.). For instance, it may be supported by an affidavit from the lawyer that allegedly prevented the testimony, or inferences from the trial record. *Id.*; *see also D'Amario v. United States*, 403 F. Supp. 2d 361, 371 (D.N.J. 2005). The petitioner must do more than merely assert that his lawyer refused to allow him to testify. The petitioner must also show that he was prejudiced by this alleged error. In the instant matter, Petitioner does not fully address either of these issues in his Motion. (*See* Pet.'s Mot.) Therefore, the Court will hold a hearing regarding Petitioner's assertion that he was prevented from testifying on his own behalf.

The Court notes that Petitioner also asserts various other complaints under the heading of a claim for ineffective assistance of counsel. Petitioner claims Bilinkas misrepresented his success rate in federal criminal trials (L 2); post-conviction, Bilinkas allegedly told Petitioner that Judge Bassler did not think he was guilty (L 13); Bilinkas ceased to represent Petitioner prior to sentencing (L14); post-conviction, Bilinkas recommended that Petitioner hire an investigator to investigate Ms. Ridilla (witness) and members of the jury (L 15); Bilinkas failed to advise Petitioner of the repercussions of posting a personal recognizance bond (L 16); Bilinkas told Petitioner he had several cases where a CPA retained his license pending the outcome of his appeal (L 17); Bilinkas allegedly advised Petitioner not to list his paintings on his statement of assets and liabilities (L 20);

post-trial, an associate of Bilinkas told Petitioner about ineffective assistance of counsel (L 21); and, Bilinkas allegedly told Petitioner that he undercharged him for his trial representation (L 22). However, as the Respondent notes and as the Court agrees, these complaints do not "bear on Bilinkas' performance as Luparella's trial counsel, and they provide no basis for a claim of ineffective assistance of counsel." (Resp't Br. at 47.) Therefore, although the Court does not specifically address each of these complaints, the Court has reviewed these assertions and has not deemed them an appropriate basis for relief.

B. CLAIM THAT CONVICTION WAS OBTAINED BY A VIOLATION OF THE PROTECTION AGAINST DOUBLE JEOPARDY

Petitioner asserts "conviction obtained by a violation of the protection against double jeopardy" as the second ground for his Motion. (Pet.'s Mot. at 5.) Petitioner contends that, in light of the civil settlement between the Bankruptcy Trustees[3] and the Petitioner's CPA firm ("LFR firm"), his conviction in this case was obtained in violation of the protection against double jeopardy. (Resp't Br. at 49; Pet.'s Mot. at 5.) A civil settlement between LFR firm and the Bankruptcy Trustees does not alter Petitioner's criminal responsibility for the charges in the Indictment. As such, it is not a viable basis for the present motion.

The Trustees were required to investigate the acts, conduct, assets, liabilities and financial

---

[3]On or about March 10, 1997, the United States District Court for the District of New Jersey appointed a trustee for the liquidation of FI Equity under the Securities Investor Protection Act ("SIPA"). (*See* Resp't Br. at 20.) On or about March 14, 1997, the Bankruptcy Court of New Jersey appointed a trustee in the bankruptcy for FI Advisors (together with the SIPA trustee, herein referred to as the "Trustees"). (*See* Resp't Br. at 20-21.)

condition of the First Interregional companies. (*See* Resp't Br. at 20-21.) Luparella was potentially liable to the Trustees if they could show that he failed to properly perform his job as outside accountant for the First Interregional companies. Therefore, during the course of the Trustees' investigation Luparella was deposed. During the deposition, Luparella testified that there were no irregularities in the audit of First Interregional. (*See* Resp't Br. at 21.)

The First Interregional Trustees sued the LFR firm for $3 million and the LFR firm's malpractice insurance carrier paid approximately $1.2 million to settle the claim. (*See* Resp't Br. at 38.) The settlement was made without the LFR firm admitting any of the claims asserted against it. (*See* Resp't Br. at 38.) At the criminal proceeding, Luparella's attorney made the argument that the civil settlement was proof that Luparella had no criminal intent, since the insurance policy coverage had an exclusion for criminal or intentional wrongdoing. (*See* Resp't Br. at 38-39.) The outcome of the civil matter has no real relevance to the outcome of the criminal proceeding. *See Hudson v. United States*, 522 U.S. 93, 99 (1997) ("The [Double Jeopardy] Clause protects only against the imposition of multiple *criminal* punishments for the same offense . . . ." (emphasis in original)).

C. CLAIM FOR DENIAL OF PROPER MEDICAL TREATMENT

Petitioner's third ground for his Motion is documented as the "denial of proper medical treatment." (Pet.'s Mot. at 5.) Specifically, Petitioner claims that he has not been provided proper medical treatment for diabetes. (*See* Pet.'s Mot. at 5-6.) Denial of proper medical treatment is a serious claim, but is not a basis for vacating, setting aside or correcting Petitioner's sentence. This

issue should be brought to the attention of the Bureau of Prisons.

D. ADDITIONAL ALLEGATIONS

      The Court notes that Petitioner raises several concerns in his response to the Government's Answer; however, such concerns do not warrant an evidentiary hearing as to Petitioner's Motion pursuant to § 2255. His allegations of deliberate deception of the court and the falsification of evidence are unsubstantiated and the integrity of the evidence and its admittance has already been addressed by the District Court and the Third Circuit.

**CONCLUSION**

      Petitioner's claim that his settlement in a related civil action precludes his prosecution by virtue of double jeopardy and, Petitioner's claim that he has been denied proper medical treatment, do not provide a basis for vacating his sentence. These claims will be dismissed without a hearing. The Court will hold an evidentiary hearing for the limited purpose of addressing Petitioner's claim that his counsel refused to allow him to testify at his trial.

      The Court will grant Petitioner's request for counsel to assist him and will appoint *pro bono* counsel.

                                                s/Susan D. Wigenton, U.S.D.J.

Orig:  Clerk
cc:    Parties
       Judge Arleo